337 P.2d 434

VRONTIKIS BROS. INC., a corporation, Nick Vrontikis and Pete Vrontikis, d/b/a Vrontikis Brothers, a partnership, Plaintiffs,

v.

UTAH STATE TAX COMMISSION, Defendant.

No. 8962.

Supreme Court of Utah.

March 26, 1959.

Cotro-Manes & Cotro-Manes, Salt Lake City, for plaintiffs.

E. R. Callister, Jr., Atty. Gen., John G. Marshall, Salt Lake City, for defendant.

WORTHEN, Justice.

Review of an assessment by defendant against plaintiffs for sales tax allegedly due the state for merchandise taken as trade-ins by plaintiffs who are engaged in the retail selling of home appliances and other merchandise. The case involves an interpretation of the Sales Tax Statute.

Section 59–15–4, U.C.A.1953, provides in part as follows:

"* * * there is levied and there shall be collected and paid:

"(a) A tax upon every retail sale of tangible personal property made within the state of Utah equivalent to two per cent of the purchase price paid or charged, or in the case of retail sales involving the exchange of property, equivalent to two per cent of the con-

sideration paid or charged, *including the fair market value of the property exchanged at the time* and place of the exchange * * *:" (Emphasis added.)

Plaintiffs concede that the State Tax Commission has the legal right to make rules and regulations so long as they are not in conflict with the Constitution and laws of the state of Utah. But plaintiffs contend that Sales Tax Regulations No. 30 and No. 72 promulgated by the State Tax Commission are not warranted under the statute but that the Tax Commission has adopted a rule at variance with what the legislature authorized.

In 1953 and subsequent to the enactment of Section 59–15–4, U.C.A.1953, the State Tax Commission promulgated Sales Tax Regulation No. 30 as follows:

"Purchase price defined. The term 'purchase price' means the price to the consumer and includes not only the amount of money paid but also the *value in money* of any property of any kind or nature received in exchange." (Emphasis added.)

Later, Sales Tax Regulation No. 72 relating specifically to "Trade-Ins" was promulgated, as follows:

"Trade-ins—'Retail sale' or 'purchase price' includes not only cash or money received but also the *value in money* of any property of any kind or nature received in exchange."

Section 59–15–4, U.C.A.1953 provides for payment of the tax on the *fair market value* of the property exchanged at the time and place of the exchange.

Plaintiffs contend that by assessing the tax against the *value in money* of the property received in exchange instead of against the *fair market value* of said property the Tax Commission has acted beyond its powers. Plaintiffs state their position as follows:

"The Tax Commission * * * has illegally assessed sales tax against the plaintiffs * * * by setting up as the basis of taxation on merchandise taken as trade-ins, the *agreed value* instead of the fair market value."

There is no dispute as to the evidence. The parties have stipulated to the facts, the pertinent portion of which stipulation is as follows:

"3. That the petitioners were and are at all times mentioned herein engaged in the retail merchandise of home appliances, sporting goods, and other merchandise and operate a store in Salt Lake City, Utah, known as Vrontikis Brothers.

"4. That the petitioners' mode of doing business is to compete with merchants in the area selling like products by allowing discounts and trade-ins on the retail price of the merchandise.

That their method of competition was and is based on a lower sales price but with a greater volume of sales.

"5. That it is and has been for the last past several years the practice of the petitioners to advertise in the daily newspapers of the area their merchandise for sale and allow a trade-in allowance against the purchase price of the new merchandise, said trade-in allowance being fixed, and said price being given regardless of the condition of the trade-in or regardless of the actual worth of the article traded in.

"6. That the petitioners, when writing up a sale, place on the sales ticket the advertised normal sales price, and subtract therefrom the amount of the advertised trade-in allowance, which figure equals the advertised net sales price.

"7. That the petitioners in many instances did and do not require the purchaser to surrender the item being traded in nor did or do the petitioners, in all instances, pick up the item traded in.

"8. That the petitioners donate to various charitable institutions large quantities of traded-in merchandise which require extensive repairs or reconditioning, and by such donations do not realize any monetary gain on such merchandise accepted by them as trade-ins.

"9. That traded-in merchandise which has resale value is resold by the petitioners and that such sales are duly recorded on the books of the petitioners as being sales of used merchandise.

"10. That the available storage space allotted for traded-in merchandise being limited, and due to the volume of business of the petitioners, it was the practice of the petitioners to either sell or donate all trade-ins within 30 days of their receipt.

"11. That the Utah State Tax Commission audited the books of the petitioners and that the audit section of the commission, by an amended report dated September 20, 1956, assessed the petitioners, Nick and Pete Vrontikis, the sum of $1,434.16 for sales tax on consideration received by them in the form of traded-in merchandise which had not been theretofore paid by them; and assessed the petitioner, Vrontikis Brothers, Inc., the sum of $3,436.37 for sales tax on consideration received by it in the form of traded-in merchandise which had not been theretofore paid by it. That subsequently the petitioners paid the above amounts to the State Tax Commission under protest.

"12. That the audit section of the Tax Commission arrived at the amounts due for sales tax on consideration received in the form of merchan-

dise accepted as trade-ins by taking the amount shown on the sales ticket as 'trade-in' and ruling that this figure was the fair market value of the item traded."

Plaintiffs contend that the Tax Commission should be obliged to accept as the basis of making the assessment the amount the trade-in brings when resold by plaintiffs. However, such approval does not comport with the statute which requires that the value shall be the value at the *time and place* of exchange. Further the parties to such later sale are not the parties to the sale we are concerned with. The later negotiations will not necessarily reflect the factors present at the original transaction.

It should also be observed that plaintiffs could not account for sales tax on all articles traded in. Plaintiffs admit, in the stipulation of facts, that *in many instances* they did not require the purchaser to surrender the item traded in nor did plaintiffs *"in all instances pick up the item traded in."* It is patent that plaintiffs' records could not reflect any sales tax on such items. Likewise it is disclosed by the stipulation that plaintiffs donate to various charitable institutions "large quantities" of traded-in merchandise from which trade-ins no monetary gain is realized.

It must be observed that there is nothing in the record to support any contention that the traded-in merchandise which is never picked up and that given to charity has no market value or value.

It is stipulated that because of the limited storage space allotted to trade-in merchandise and due to the volume of business, "it was the practice of the petitioners to either sell or donate all trade-ins within 30 days of their receipt."

Even if it were proper to fix the fair market value of the traded-in merchandise at what it brought when resold we lack one of the most essential elements in establishing fair market value.[1] It would appear that plaintiffs were under the necessity of getting rid of the merchandise within a limited time which may well require its being sold for less than it would bring if more time were available.

Plaintiffs discuss and give definitions of the term *fair market value*. That term is not subject to any disagreement. This court recently observed:

" * * * The accepted formula for determining fair market value is * * what would a purchaser willing to buy but not required to do so, pay and what would a seller willing to sell but not required to do so ask."

Plaintiffs contend that all merchandise left with customers and all donated to charitable institutions has no market value. It is admitted by plaintiffs that substantial

1. State By and Through Road Commission v. Noble, 6 Utah 2d 40, 305 P.2d 495.

quantities of trade-in merchandise is not brought in, is not picked up and is never seen by plaintiffs.

■ The stipulation of facts discloses that the interest of the State of Utah would be jeopardized if plaintiffs were allowed to determine the fair market value as proposed. Undoubtedly one of the purposes for authorizing the Tax Commission to make rules and regulations was to afford a uniform and simple basis for the assessment of said taxes. If the Tax Commission were obliged to go behind each transaction in plaintiffs' merchandising method it would work an unwarranted hardship and expense on the Tax Commission that might well eat up any taxes recovered.

■ It must be conceded that tax laws should be applied uniformally. That is what is sought by the regulations. If petitioners may by leaving the traded-in merchandise with the customers and by donating other merchandise to charity, a benefit will doubtless be bestowed on them while the State of Utah is disadvantaged.

■ It would appear that the regulations are fair and in the interest of expeditious administration of the State Tax Act. And plaintiffs may not complain that they have not provided in their sales agreement a value which could be used as fair market value other than the cash allowance. At the time the agreement was made between plaintiffs and their customers as to the trade-in merchandise and the value indicated neither was under any obligation to do business. Doubtless each felt that he was making a good deal—it may be that each felt that he was realizing some advantage over the other. It is difficult to assume that plaintiffs would have agreed to accept the trade-in unless they were satisfied that they were getting as much as they were giving.

We are of the opinion that plaintiffs should not object if they are denied the privilege of setting the price of the trade-in for tax purposes at a figure different than they have declared it for sale purposes.

It was admitted at argument that regulations containing the language objected to in Regulations 30 and 72 were promulgated as early as 1937.

The fact that the legislature has known of the administrative interpretation of the term fair market value since 1937 is persuasive of the fact that the legislative intent was expressed by the regulation.

Without regulations that make the administration of the sales tax relatively simple and that adopt the value of the trade-ins as plaintiffs and their customers have declared the value to be, the Tax Commission would not be able, without greatly increased staff, to administer the act.

The assessment as made should stand. (No costs awarded.)

CROCKETT, C. J., and McDONOUGH, J., concur.

HENRIOD, Justice (dissenting).

I dissent because I believe the decision here amounts to judicial legislation. The statute clearly levies a tax only on the *fair market value* of the trade-in items. The stipulation set out in the opinion and the opinion itself clearly indicate that the fair market value of the trade-in item is not the amount that is credited to the customer. It obviously is *not* the fair market value since the same amount is allowed on near-worthless items as is allowed on items having varying resale values.

The main opinion seems to be bottomed on the idea that to assess the tax on the basis of fair market value would lead to such cumbersome results as to make collection of the tax not only impracticable but profitless. To choose arbitrarily any other value by such process of reasoning, simply asserts that because of such impracticability, fair market value means something that it never meant before, and is to say that the legislature did not mean fair market value when it said fair market value.

The fact that the opinion says that "the legislature has known of the administrative interpretation of the term fair market value since 1937 is persuasive of the fact that the legislative intent was expressed by the regulation" does not prove that such reasoning is anything but a weak and unrealistic substitute for precedent and judicial authority. Furthermore the statement is not apt in this case at all, since there was no need for the legislature to concern itself about any interpretation of the phrase "fair market value" in the appliance field in 1937. There was no need for any such concern until 1956 when this court invalidated the Fair Trade Act [1] in the case of General Electric Co. v. Thrifty Sales Inc.,[2] since practically all appliances were fair-traded items whose prices were fixed, so that no reduction in price could be effected by any such subterfuge as crediting any and all trade-ins, worthless or not, with an identical and arbitrary figure. Before 1956 one could not have advertised and sold a fair-traded item on the basis of a $499 sales price, with $199 credited against it for a worthless or almost worthless trade-in, leaving a cash balance of only $300 for the customer to pay, as was done in the instant case. Any argument, therefore, to the effect that by failure to clarify the words "fair market value," (which already were very clear), the legislature knew, and by its inaction, concluded, that fair market value didn't mean fair market value, but meant a value loaded with an

1. Title 13, Chap. 4, Utah Code Annotated 1953.

2. 1956, 5 Utah 2d 326, 301 P.2d 741.

item having little or no value, on which some one has hung an artificial and meaningless price tag in order to sell some other article at the latter's real market value, is, in my opinion, simply an argument that is as artificial as the price tag and quite as unjudicial.

WADE, J., concurs in the views expressed by Mr. Justice HENRIOD.